IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY ANAST,                )
                              )
        Plaintiff,             )
                              )
    vs.                       )    Case No. 16 C 8763
                              )
LTF CLUB OPERATIONS CO., INC.  )
and LIFE TIME FITNESS, INC.,   )
                              )
        Defendants.            )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

About 1:00 a.m. on August 9, 2014, Gregory Anast was playing basketball with a friend at the Life Time Fitness (LTF) facility in Vernon Hills, Illinois. He saw an employee of LTF who appeared to be sweeping or mopping the floor but did not see exactly what the man was doing. While chasing a loose ball, Anast slipped and fell near the edge of the basketball court and broke his ankle. After he fell, he saw water standing on the floor where he had slipped. The person who likely was the LTF employee testified that he had been cleaning around the edges of the floor with a damp mop and bucket.

The defendants, LTF Club Operations Co. and Life Time Fitness, Inc. have moved for summary judgment. In deciding the motion, the Court views the evidence in the light most favorable to Anast and draws reasonable inferences in his favor.

The operator of a business owes its customers a duty to exercise reasonable care to maintain the premises in a reasonably safe condition for their use. *See, e.g.,*

*Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141, 554 N.E.2d 223, 227 (1990). When a business invitee like Anast is injured in a fall, the business operator is liable if the condition that caused the fall was placed there by the operator's agents or if the operator or its agents had actual notice of the condition or it was there long enough that it should have been discovered with ordinary care. *See, e.g., Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1039, 735 N.E.2d 662, 667 (2000).

Anast has offered evidence that would permit a reasonable jury to find that his fall was caused by water standing on the floor of the basketball court and that the water was placed there by an agent of LTF or at least had been there long enough that an employee of LTF reasonably should have discovered it. Specifically, Anast testified that he slipped hard, indicating to him that there was something unusual about the condition of the floor, and after he fell, he saw a puddle of water in the area where his foot slipped. In addition, there was an LTF worker in the area who was working with a wet mop who had been there for some time before the fall, and there was no one else in the area, likely due to the late hour. LTF is not entitled to summary judgment based on the insufficiency of the evidence offered by Anast.

LTF's primary argument in support of summary judgment is that Anast's claim is barred by an exculpatory clause in the agreement that he signed when he because a member of LTF some months earlier. The agreement contains sections entitled "Assumption of Risk" and "Waiver of Liability," which include the following undertakings:

> **2. ASSUMPTION OF RISK.** I understand that there are **dangers, hazards, and risks of injury or damage, some of which are inherent in the use of Life Time's premises, facilities, equipment, services, activities, or products** . . . .
>
> . . .

2

**B. Risks.** I understand that the **dangers, hazards, and risks** of injury or damage in the Use of Life Time Premises and Services ("Risks") may include but are not limited to **(1) slips, trips, collisions, falls, and loss of footing or balance, including "slip and falls" and falls from rock climbing structures or fitness equipment; (2) drowning; (3) equipment failure, malfunction, or misuse; (4) property theft, loss or damage, including from lockers or vehicles;** and (5) other accidents or incidents that may result in injury or damage to me, Minor Member(s), Other Member(s) or Guests.

. . .

I understand that Risks and Injuries in the Use of Life Time Premises and Services (collectively, "Risks of Injury") **may be caused, in whole or in part, by the ORDINARY NEGLIGENCE OF LIFE TIME**, me, Minor Member(s), Other Member(s), Guest(s) and/or other persons. **FULLY** [sic] **UNDERSTAND, AND VOLUNTARILY AND WILLINGLY ASSUME, THE RISKS OF INJURY.**

**3.     WAIVER OF LIABILITY.** On behalf of myself . . ., I hereby voluntarily and forever **release and discharge Life Time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims**, demands, actions, causes of action, . . . or any other alleged liabilities or obligations of any kind or nature, whether known or unknown (collectively, "Claims") **for any Injuries** to me . . . in the Use of Life Time Premises and Services **which arise out of , result from, or are caused by any Ordinary NEGLIGENCE OF LIFE TIME**, me, any Minor Member(s), any Other Member(s), any Guest(s), and/or any other person . . . . **(collectively, "Negligence Claims").**

**A.     Negligence Claims.** I understand that Negligence Claims include but are not limited to Life Time's (1) negligent design, construction (including renovation or alteration), repair, maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; (3) negligent failure to provide or keep premises in a reasonably safe condition; (4) negligent provision of or failure to provide emergency care; (5) negligent provision of services; and (6) negligent hiring, selection, training, instruction, certification, supervision or retention of employees, independent contractors or volunteers; or (7) other negligent act(s) or omission(s).

Defs.' LR 56.1 Stat., Ex. G (emphasis in original).

Illinois law is clear that an entity, including a fitness facility, may contract away liability for its own negligence via an exculpatory agreement. *See, e.g., Cox v. U.S. Fitness, LLC*, 2013 IL App (1st) 122442, ¶ 14, 2 N.E.3d 1211, 1215. An exculpatory agreement will be upheld under Illinois law unless it violates settled public policy, the parties have a special or substantially disparate bargaining relationship that precludes enforcement, or the type of injury the plaintiff sustained was not reasonably foreseeable or contemplated. *See, e.g., Garrison v. Combined Fitness Ctr., Ltd.*, 201 Ill. App. 3d 581, 584, 559 N.E.2d 187, 189-90 (1990). The first two of these exceptions do not apply; Anast does not argue otherwise. Specifically, there is no public policy that precludes a fitness center from enforcing an exculpatory agreement, and this is not one of the types of situations where a special relationship or disparate bargaining power precludes enforcement. *Garrison*, 201 Ill. App. 3d at 585-86, 559 N.E.2d at 190.

Anast argues that the third exception applies. He contends that the condition that caused his injury was not within the scope of possible dangers ordinarily accompanying playing basketball and thus was not reasonably contemplated. *See Hamer v. City Segway Tours of Chicago, LLC*, 402 Ill. App. 3d 42, 45, 930 N.E.2d 578, 581 (2010). As Judge Sam Der-Yeghiayan stated in another case involving LTF:

> To be valid, an exculpatory agreement "must spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered by [its] terms." . . . [But] [a]n injury not specifically contemplated in an exculpatory clause can also still be covered if it "fall[s] within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties."

*Locke v. Life Time Fitness, Inc.*, 20 F. Supp. 3d 669, 673 (N.D. Ill. 2014) (quoting *Hamer*, 341 Ill.Dec. 368, 930 N.E.2d at 581).

4

Anast argues that the exculpatory agreement does not expressly cover the condition or injury that took place here and that the danger that existed was not of a type that ordinarily accompanies playing basketball and thus was not reasonably contemplated. The Court disagrees. Slippery conditions—and specifically water—on a gym floor is within the scope of dangers that may ordinarily accompany playing basketball, and it is thus within the reasonable contemplation of an ordinary person entering into an exculpatory agreement like the one Anast signed.

Anast argues that "there is no reference [in the agreement] to Plaintiff's allegation that Life Time's failure to either prohibit the use of or rope off the dangerous areas of their basketball courts while its employees were cleaning the floors." Pl.'s Mem. in Resp. to Defs.' Mot. for Summ. J. at 5. But this is, as LTF argues, simply another way of contending that LTF was negligent in failing to warn of, or remove, a hazardous condition—a danger expressly covered by the exculpatory agreement and, as it relates to water on a gym floor, within the reasonable contemplation of an ordinary person entering into the exculpatory agreement.

This case is nothing like the two on which Anast relies, *Locke*, which involved an injury resulting from improper or defective training of employees, or *Offord v. Fitness International, LLC*, 2015 IL App (1st) 150879, 44 N.E.3d 479, in which the injury resulted from a leaking roof or window. *See id.* at ¶ 21, 44 N.E.2d at 484-85 (noting that the exculpatory agreement at issue "does not make any mention of shielding defendant from liability from the building itself being defective"). In those situations, the danger went beyond both what the agreements in question covered and what would have been reasonably contemplated by persons engaging in the particular activities involved. Here

5

the situation is different; the injury is claimed to have resulted from an employee's failure to remove or warn of a hazardous condition, which LTF's exculpatory agreement specifically mentions. It is true that an exculpatory agreement exempting liability for negligence is strictly construed against the party it benefits, *Cox*, 2013 IL App (1st) 122442, ¶ 14, 2 N.E.3d at 1215, but "[t]he precise occurrence that results in injury . . . need not have been contemplated by the parties at the time of contracting. The injury must only fall within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties." *Id.* at ¶14, 2 N.E.2d at 1215-16 (internal quotation marks and citation omitted). That is the case here. The defendants are entitled to summary judgment.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [dkt. no. 37] and vacates the status hearing and ruling set for November 21, 2017. The Clerk is directed to enter judgment in favor of defendants and against plaintiff.

Date: November 20, 2017  _____
MATTHEW F. KENNELLY
United States District Judge